## SIMPSON STURGEON *v.* T. CONN.

**Lands and Conveyances—Possession under Division by Parties—Descent and Distribution—Title in Severalty.**
A division of lands, descending to devisees, having been made by actual survey, the parties entering upon their respective parts, separated by a distinctly marked line, and thus held continually is held that the possession thus operated to sever the joint title, and to clothe each one with the title in severalty, freed from all incumbrances on account of any supposed title in a co-devise.

**Pleading—Failure to Answer Allegation in Petition.**
The failure to deny the charge in a petition, of a deed having been given for land, (and last, admit its correctness), and will act as a bar to a denial of a continuous chain of title, in a subsequent suit.

**Adverse Possession—Not Interrupted by Decree of Court.**
Though a decree of court may limit the legal title to land to only one half a designated amount, one in possession of the whole tract for a continuous period of more than twenty years by a hostile holding including the time of the litigations thus stated, will be held to have a good title by adverse possession.

**Same.**
The possession of the whole tract is not interrupted by the decree of court, nor converted into a friendly holding, and this possession for twenty years will bar a right of recovery.

APPEAL FROM LOUISVILLE CHANCERY COURT.

March 1, 1869.

OPINION OF THE COURT BY JUDGE PETERS:

On the 20th of September, 1866, this action was brought by appellee against the devisees and executors of Mrs. Jane Sturgeon, alleging that Robert Sturgeon, her husband, died in 1837, the owner of about 300 acres of land in Jefferson county. That by his will he devised 25 acres of said tract to be taken off a designated end to his son Thomas Sturgeon, and the residue of said tract he devised to his sons Moses and Simpson Sturgeon.

That the testatrix under her execution sale and decree of the

Louisville chancery court in case "*5969*" referred to and made part of the petition, acquired title to an undivided moiety of 115 acres of said land, being the interest of Moses Sturgeon *then* deceased in the said 115 acres. That in obedience to said decree, the commissioner of said court conveyed the moiety of said land to the testatrix. But that by her will she had directed the whole 115 acres, describing it, by metes and bounds, to be sold, and the proceeds to be distributed to her devisees, claiming the whole tract, when she was in fact under the said sheriff's sale and decree of the court entitled to only an undivided half thereof.

That Moses Sturgeon died unmarried, and childless, seized of one undivided moiety of the tract devised to himself and brother by their father including the undivided moiety of 115 acres or 57½ acres which has been in possession of said Jane Sturgeon as her dower, and also in Simpson Sturgeon's possession as coparcener, and, that on the death of Moses, all his interest passed to his "*six* brothers and sisters"—the names of whom are given.

He then alleges that he is the owner of the interest of Bryant and wife (Mrs. Bryant being a sister of Moses Sturgeon) by their conveyance to him, copy of which he files; that he now owns the interest of Thomas Sturgeon, whose bond for a conveyance he has, and files, and that he also has contracted with John H. Wood and wife, Mrs. Wood being a sister of Moses Sturgeon, for their interest, and has their bond for a title, which he files as an exhibit; and prays for a partition of the whole tract owned by Robert Sturgeon, the testator, by first laying off and setting apart to Thomas Sturgeon 25 acres as directed in the devise to him, and then dividing the residue equally between Simpson Sturgeon and the heirs of Moses Sturgeon, and then of the half set apart to said heirs to lay off 57½ acres thereof to the devisees of Jane Sturgeon, and divide the balance equally amongst the heirs of Moses Sturgeon, deceased, giving to him 3-7 thereof, which he claims under his several purchases from a brother and two sisters of said decedent.

By an amended petition, appellee alleges that since he commenced his action John Harvey Sturgeon, a brother of Moses, had died, who was entitled as one of his heirs to one-seventh interest, and by virtue of his purchase from Thomas Sturgeon he is entitled to 1-7 of said John Harvey Sturgeon's 1-7 as an heir of Moses, and asks that it may also be set apart to him.

On final hearing, the chancellor adjudged to appellee 19-42 of 57 1-2 acres of said land, and directs his master commissioner in the manner in which the division is to be made, and this appeal is prosecuted to reverse that judgment.

Simpson Sturgeon in his answer, after denying the right of appellee to any part of the land, avers that in the year 1840 commissioners were appointed for the purpose, and went upon the land devised to them by their father, and divided it between himself and his brother Moses; a surveyor being one, a dividing line was run and established between the two parcels, assigning to Moses 115 acres, and to him 145 acres, Moses getting the improvements; his part being nearly all woodland, and on that account a greater number of acres were assigned to him; that a report of the division was made out and signed, and both parties being satisfied therewith, each one immediately entered on their respective parts, and the same have been held and occupied in severalty continuously from the time of the division in 1840 to the present time. That from the time of the sale made of the 115 acres assigned to Moses under an execution against him and others and the purchase thereof by his mother, she had been in the actual possessisson of it to her death, claiming the whole of it as her own, and adverse to all other claims, and disposed of it by her will.

The bond from Wood, the husband of a sister of Moses Sturgeon, to appellee bears date the 27th of October, 1845. That of Thomas Sturgeon to him is dated 4th of February, 1851. And the deed of Bryant and wife to him the 13th of December, 1845.

It appears from a copy of an execution filed as an exhibit in the cause that the same was issued on the 13th of May, 1843, from the office of the Jefferson circuit court, against Moses Sturgeon, Jane Sturgeon and two others, in favor of Vance & Marders for upwards of $100, and was placed in the hands of the sheriff of said county the same day it was issued, who returned that he levied it, on all the right, title and interest of said Moses and Jane Sturgeon in and to *115* acres of land in Jefferson county, giving the boundary which was given up to him by a writing exe-cute l by them which he returned with the execution, from whi. i it appears that they did surrender the 115 acres including the dower right of said Jane, and the whole tract was sold by the sheriff on the 10th of August, 1843, when the plaintiffs in the execution became the purchasers for the amount of their debt;

and on the 3rd of September, 1844, for value received, they transferred their purchase to Mrs. Jane Sturgeon.

In 1848, Mrs. Jane Sturgeon filed her bill in the Louisville chancery court, setting forth the sale of the 115 acres of land, and the purchase thereof as hereinbefore stated, and alleged that her son Moses died in August, 1844, indebted to her in a considerable sum of money, that appellee was his administrator, whom, with the brothers and sisters of said Moses, she made defendants, and prayed for a conveyance of the land to her, and asked that appellee should be compelled to settle his administration accounts, and for the satisfaction of her demands against the estate of Moses Sturgeon; Vance, Marders and the sheriff who made the sale, were also made defendants. She alleged that Vance had executed a deed to her for the land, and it was left in the clerk's office of the Jefferson county court for the signature and acknowledgement of Marders, but he never signed it.

Appellee filed his answer to the bill, which he made a cross-bill against the complainant, and some of his co-defendants, in which he admits the sale of the land under the execution, that Moses died within one year after the sale and charges that his mother made the arrangement with the plaintiffs in the execution for the redemption of the land before the time to redeem had expired; but had the evidence of her right to redeem dated after the expiration of the year for the fraudulent purpose of securing the title of the land to herself, and then devoted the residue of his answer to statements relating to the personal estate of Moses Sturgeon, deceased; charges the complaint with having converted a portion of it, and he also prays for a settlement of his administration accounts.

The complainant answered his cross-petition against her, controverts all charges made against her in relation to the use or conversion of any part of said intestate's estate. And making the same also an amendment to her original petition, charges that the deputy sheriff who made the sale of the land under the execution of Vance & Marders joined with Vance in a conveyance of the land to her; that Ben R. Pollard wrote the deed; that she bought the land for her own use, and the deed, after being signed by Sturgeon, the deputy sheriff and Vance, was left in the office aforesaid for the signature of Marders, and was by some means lost; and charges that appellee, as she had been informed, had bought the claims

of her three children named to harass her, for very inconsiderable sums; charges that she has been in possession of the land ever since the sale to her, claiming it as her own, and prays for the relief sought in her original bill.

The appellee answered that amended bill, admits that he bought the three interests named, but denies that the sums paid were inconsiderable; states he paid for each share $125; denies that he made the contracts for the purpose of harassing her, and says her claim to the land is a mere pretended and void one. But wholly fails to deny that the conveyance was made to her by the deputy sheriff and Vance, or that she was in possession of the land, nor a surrender of any part of it to him or his vendees.

The principal litigation in that suit was between Mrs. Sturgeon and appellee, and on the 21st of November, 1851, resulted in the following decree:

> "It seems to the court that there was not such partition of the tract of land as would allow any but a moiety to pass by the sheriff's sale. And it further seems to the court that the purchase of Vance and Marders was after the time of redemption had expired.
>
> "Wherefore, it is ordered that the late sheriff, and said Vance and Marders, do convey the said moiety of land to the complainant, and this cause is referred to the commissioner to report the state of accounts between the estate of Moses Sturgeon and the complainant charging her with such property of his estate as she has used, or sold, and also to settle the accounts of T. Conn, administrator of said Moses, and report also the amount of debts that may be yet owing by said estate. But the court now decrees that there is no debt owing to said Bryant."

At another term of the court the master was ordered to convey the half of the 115 acres of land to Mrs. Jane Sturgeon, on the part of the sheriff and Vance & Marders, they having failed to convey. And on the 2nd of October, 1852, the conveyance was made by the master as directed. And nothing more ever seems to have been done in the case.

This prolonged history of the case seemed necessary to a clear presentation of the questions involved.

For appellee it is insisted that the decree of 1851 recited was final, and the deed made in obedience to it now irrevocably fixed

and limited the right of Mrs. Sturgeon to 57½ acres of the land, and the residue of the tract necessarily passed to the heirs of Moses Sturgeon on his death—three of whom he had bought out, and was entitled to their shares.

It is not shown that the commisisoners who made the division of the land were appointed by the county court, and it must be admitted that the division made by them was *as the act of the court,* of its *commissioner,* wholly inoperative to destroy the joint estate which Moses and Simpson Sturgeon took by the will of their father and to sever their joint title. Still it is conclusively shown that the division in fact was made in 1840, and the parties then entered upon their respective parts, separated by a distinctly marked line, and each one held up to this line an exclusive possession, under claim of sole and severed and several title, Simpson up to the trial of this cause, and Moses, and his mother, and those under her, to the same time.

The effect of the possesion thus taken and held was to sever the joint title, and to clothe each one with the title in severalty, freed from all encumbrances on account of any supposed title in a co-devisee.

Drane vs. Gregory's Heirs, 3 B. Mon., 619; Parker's Heirs vs. Anderson, 5 Mon., 450.

Waiving the consideration of the effect of the deed by the sheriff who made the levy and sale of the land, to Mrs. Sturgeon, which she alleges, and proves, and which appellee does not deny, and of which according to the evidence he had notice, and conceding that the decree of 1851 and the deed under it limited her title acquired by her purchase to 57 1-2 acres, still her adverse possession of the whole 115 acres, commenced in 1844 as is alleged and proved, and it was continued without interruption for more than twenty years before the commencement of this suit.

Her possession of the whole tract was not interrupted by said decree, nor converted into a friendly holding, but her hostile attitude to appellant, as to the land, was made manifest in that suit. And the effect of the possession thus held by her, and transmitted to her vendees, must operate as a bar to appellee's claim.

Wherefore, the judgment is reversed, and the cause is remanded with directions to dismiss the petition.

*Bullitt, Pope, for appellant.*
*Stirman, for appellee.*